P. STERLING KERR, ESQ.
Nevada Bar No. 3978
TAYLOR SIMPSON, ESQ.
Nevada Bar No. 13956
LAW OFFICES OF P. STERLING KERR
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: taylor@sterlingkerrlaw.com
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| MINA DE ORO, LLC, a Nevada limited liability company; THE TOY CHEST, LLC a Nevada limited liability company,<br>Plaintiffs,<br><br>v.<br><br>MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations,<br><br>Defendants. | Case No. 2:20-cv-994 |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, MINA DE ORO, LLC, THE TOY CHEST, LLC (hereinafter collectively referred to as "Plaintiffs") by and through its attorneys, the Law Offices of P. Sterling Kerr, and complain and allege against Defendants MATTHEW BRENT GOETTSCHE, JOBEDIAH SINCLAIR WEEKS, JOSEPH FRANK ABEL, SILVIU CATALIN BALACI and BITCLUB, an unknown entity, (hereinafter collectively referred to as "Defendants") as follows:

**NATURE OF ACTION**

1. Plaintiffs brings this action against Defendants to seek relief from their violations of Rule 10b-5 under the Securities Exchange Act of 1934, 15 U.S.C. § *78a, et seq.*, codified at 17 C.F.R. § 240.10b-5 (the "Federal Claims"). Plaintiffs additionally asserts pendent

claims arising out of the same operative facts as the Federal Claims for violation of NRS 90.570, fraud, negligent misrepresentation, fraudulent inducement, breach of contract, and unjust enrichment (the "State Law Claims").

**PARTIES**

2. Plaintiffs are Nevada limited liability companies domiciled in Nevada and subject to Nevada law and jurisdiction.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction of this action pursuant to 28. U.S.C. § 1331 based upon the existence of a question arising under particular federal statutes and regulations, namely 15 U.S.C. § 78a, *et seq*., and 17 C.F.R. § 240.10b-5. In addition, the Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, as the action is between parties of diverse citizenship and the amount is controversy exceeds $75,000. Plaintiffs also invokes the supplemental jurisdiction of this Court to determine the State Law Claims raised herein pursuant to 28 U.S.C. § 1367.

4. Venue in the District of Nevada is proper pursuant to 28 U.S.C. § 1391(b) because certain of the Federal Claims and the State Law Claims arose against Nevada entities formed and whose resident agents reside in Clark County, State of Nevada.

5. This Court has personal jurisdiction over Defendants, in Nevada because:

(a) The Plaintiff entities are Nevada entities and the solicitations to purchase the fraudulent securities occurred in the State of Nevada.

(b) The Plaintiffs entities are Nevada residents whom purchased the fraudulent securities and Defendants knew this and purposely availed themselves of the benefits of conducting business in the State of Nevada and solicited Nevada residents in the State of Nevada.

**FACTS COMMON TO ALL COUNTS**

6. During the spring of 2018, Defendants engaged in direct and indirect solicitation of the Plaintiff entities to participate in a Bitcoin ("BTC") related multi-level BTC mining scheme ("the Bitclub Offering") by offering for sale positions in a Multi-level matrix and shares

of BTC mining business issued by Defendants.  Defendants engaged in these private and public solicitations through a website (www.bitclub.com ("Bitclub") wherein the Defendants created and maintained a website for the Bitclub Offering, and through independent business operators within the Bitclub scheme through the means or instrumentalities of interstate commerce, including email and the internet.

7.      In connection with the Bitclub Offering, Defendants had and owed to Plaintiff entities a duty to disclose and provide truthful and honest facts and information concerning the Bitclub Offering.

8.      In an effort to solicit the Plaintiff entities and to induce them into investing in the Bitclub Offering, Defendants, acting both individually and as the controlling members of the Bitclub Scheme made the following untrue statements of material fact to Plaintiffs (the "Bitclub Misrepresentation"):

(a) misleading figures regarding the amount of crypto currency mining operations in place;

(b)  misleading figures regarding the amount of crypto currency being mined at Bitclub controlled mining operations;

(c)  misleading figures and documentation regarding the amount of future profit to be derived from the Bitcoin mining operations;

(d)   fraudulent statements from Defendants and Defendants' independent business operators within the multi-level marketing scheme regarding commissions to be paid for joining the Bitclub Scheme and recruiting others to join the Bitclub Scheme and invest in the Bitclub Offering;

(e)  misleading statements regarding future operations and investments by the Bitclub management;

(f) untrue and misleading statements regarding access to funds invested in the Bitclub Offering through an internet based website.

9. At the time the Bitclub Misrepresentations were made to Plaintiffs by the Defendants, the Defendants also knew, or reasonably should have known, of the following materials facts that Defendants omitted to communicate to the Plaintiffs ("the Bitclub Omissions"):

(a) risk involved in crypto currency mining operations concerning costs of mining, reduced mining rewards because of competition and volatility of the BTC and crypto currency markets;

(b) illegality of the Bitclub Scheme as it relates to the multi-level marketing scheme;

(c) illegality of the Bitclub Offering and failure of Bitclub and Defendants to register the Bitclub Offering as a security with the Securities Exchange Commission and the State of Nevada Securities Division;

(d) that proceeds from the Bitclub Offering and the multi-level Bitclub Scheme were being converted by the Defendants for their personal use rather than the acquisition of promised crypto currency mining equipment.

10. In reasonable and justified reliance upon the Bitclub Misrepresentations and Bitclub Omissions made by Defendants, each of the Plaintiffs transmitted BTC or cash to Defendants to purchase a specified amount of the Bitclub Offering as follows:

a) Plaintiff, MINA DEL ORO, LLC, invested $250,000.00 USD to a Bitclub representative for purchase of the Bitclub Offering;

(b) Plaintiff THE TOY CHEST, LLC, invested $250,000.00 USD to a Bitclub representative for purchase of the Bitclub Offering.

11. In reasonable and justified reliance upon the Bitclub Misrepresentations and

Bitclub Omissions made by Defendants, the Defendants presented and each of the Plaintiffs entered into a Bitclub Scheme investor contract as set forth in the Bitclub Scheme website ("Bitclub Contract").

12. Plaintiffs would not have purchased the Bitclub Offering or entered into the Investor Contracts if Plaintiffs had known that the Bitclub Misrepresentations were false or if Plaintiffs had been aware of the Bitclub Omissions.

13. Subsequent to their solicitation and sale of the Biclub Offering to Plaintiffs, Defendants have materially breached and defaulted on their obligations to Plaintiffs under the parties' contracts by, among other actions:

(a)  failing and refusing to pay dividends, bonuses and other compensation due to the Plaintiffs as required by the investor contracts;

(b)  repeatedly misrepresenting and concealing the true nature and status of the Plaintiff's investments in Bitclub as well as the finances, operations and legal status of Bitclub; and

(c)  violating various state and federal laws in connection with the offer and sale of the Bitclub Offering to the Plaintiffs and other investors in Bitclub.

14. As a direct and proximate consequence of the Defendants' unlawful conduct as described herein, the Plaintiffs have and will continue to incur substantial damages. The Plaintiff's damages from the loss of their investment due to the Defendants' actions and inactions include the $250,000.00 USD investment of each of the Plaintiffs and the mined BTC and loss of investment returns given the value of BTC currently, excluding unpaid dividends, interest, attorney's fees and costs of litigation.

15. Plaintiffs have made repeated demands upon Defendants to rescind the unlawful transactions at issue and to return the monies that Defendants fraudulently obtained from

Plaintiffs. To date, Defendants have shut down the Bitclub website and failed and refused to return the Plaintiff's monies, and have continued to engage in their unlawful actions and inactions.

16. Plaintiffs have fulfilled or performed all conditions precedent to the filing of this action, and/or such conditions precedent have been waived by Defendants.

**COUNT I – VIOLATION OF 17 C.F.R. § 240.10B-5**
**(By All Plaintiffs Against All Defendants)**

17. Plaintiffs reallege and incorporate Paragraphs 1 through 16 as if fully set forth herein.

18. The Bitclub Offering offered for sale by Defendants and purchased by Plaintiffs constitute securities under the Securities Act of 1933.

19. Defendants made untrue statement of material facts to Plaintiffs concerning the Bitclub Offering, including, but not limited to, the Bitclub Misrepresentations, in connection with the sale of the Bitclub Offering.

20. Defendants were aware of and omitted to communicate certain material facts concerning the Bitclub Offering to Plaintiffs, including, but not limited to, the Bitclub omissions, in connection with the sale of the Bitclub Offering.

21. The Bitclub Misrepresentations and Bitclub Omissions made by Defendants constitute acts, practices, or a course of business that operated as a fraud and deceit upon Plaintiffs.

22. Defendants used means of instrumentalities of interstate commerce, including the mail, email and the internet, in connection with the Bitclub Misrepresentations and Bitclub Omissions, and to directly or indirectly employ a device, scheme, or artifice to convince Plaintiffs to purchase the Bitclub Offering.

23. Defendants obtained BTC, money and/or other property from Plaintiffs as a result of the Bitclub Misrepresentations and Bitclub Omissions.

24. The Bitclub Misrepresentations and Bitclub Omissions of the Defendants

constituted securities fraud in violation of 17 C.F.R. § 240.10b-5.

25. Plaintiffs have suffered damages as a direct and proximate cause of Defendants' violation of 17 C.F.R. § 240.10b-5.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for compensatory damages, incidental and consequential damages, punitive and exemplary damage, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**COUNT II – VIOLATION NEVADA SECURITIES LAW**
**NRS 90.570, et. al.**
**(By Plaintiffs Against all Defendants)**

26. Plaintiffs reallege and incorporate Paragraphs 1 through 25 as if fully set forth herein.

27. This is a claim by Plaintiffs, Nevada domiciled entities against Defendants for violation of NRS 90.570 and all other applicable securities statutes under NRS Chapter 90.

28 The Bitclub Offering and the Bitclub multi-level marketing positions purchased by Plaintiffs from Defendants constitutes an "investment" under NRS Chapter 90.

29. In connection with the Bitclub Offering to Plaintiffs, Defendants made the following misrepresentations and omission of fact:

(a) misleading figures regarding the amount of crypto currency mining operations in place;

(b) misleading figures regarding the amount of crypto currency being mined at Bitclub controlled mining operations;

(c) misleading figures and documentation regarding the amount of future profit to be derived from the Bitcoin mining operations;

(d) fraudulent statements from Defendants and Defendants' independent business operators within the multi-level marketing scheme regarding commissions to be

paid for joining the Bitclub Scheme and recruiting others to join the Bitclub

Scheme and invest in  the Bitclub Offering;

(e)    misleading statements regarding future operations and investments by the Bitclub

management;

(f)    failing and refusing to pay dividends, bonuses and other compensation due to the

Plaintiffs as required by the investor contracts;

(g)    repeatedly misrepresenting and concealing the true nature and status of the

Plaintiff's investments in Bitclub as well as the finances, operations and legal

status of Bitclub; and

(h)    violating various state and federal laws in connection with the offer and sale of

the Bitclub Offering to the Plaintiffs and other investors in Bitclub.

30.    Defendants made the Bitclub Misrepresentations and Bitclub Omissions to Plaintiffs with reckless disregard for the truth of their communications.

31.    Defendants knew or reasonably should have known that Plaintiffs would justifiably and reasonably rely on the Bitclub Misrepresentations and Bitclub Omissions.

32.    Plaintiffs justifiably and reasonably relied on the Bitclub Misrepresentations and the Bitclub Omissions in connection with his purchase of Bitclub Offering.

33.    Defendant violated NRS 90.570 by causing Plaintiffs to invest in the Bitclub Offering in reliance upon the Bitclub Misrepresentations and Bitclub Omissions.

34.    Plaintiffs have suffered damages as a direct and proximate cause of Defendants' violations of NRS 90.570 and other securities laws set forth in NRS Chapter 90.

**WHEREFORE,**  Plaintiffs respectfully request that the Court enter a judgment against Defendants for actual compensatory damages, for rescission of Plaintiffs' purchase of the Bitclub Offering, incidental and consequential damages, punitive and exemplary damages, pre-and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**<u>COUNT III – COMMON LAW FRAUD</u>**
**(By Plaintiff against All Defendants)**

35. Plaintiffs reallege and incorporate Paragraphs 1 through 34 as if fully set forth herein.

36. In connection with the Bitclub Offering, Defendants misrepresented and omitted to communicate material facts concerning the Bitclub Offering to Plaintiffs, including, but not limited to, the Bitclub Misrepresentations and Bitclub Omissions.

37. Defendants knew they were omitting material facts concerning the Bitclub Offering in order to induce Plaintiffs to invest in and purchase the Bitclub Offering.

38. Plaintiffs reasonably and justifiably relied upon the Bitclub Misrepresentations and Bitclub Omissions by investing in and purchasing the Bitclub Offering.

39. Plaintiffs were induced into purchasing the Bitclub Offering as a result of the Bitclub Misrepresentations and Bitclub Omissions, and Plaintiffs would not have purchased the Bitclub Offering had Defendants not made the Bitclub Misrepresentation and Bitclub Omissions.

40. Plaintiffs have suffered damages as a direct and proximate cause of Defendants' fraud.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for rescission, compensatory damages, incidental and consequential damages, punitive and exemplary damages, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**<u>COUNT IV – FRAUDULENT INDUCEMENT</u>**
**(By Plaintiff against All Defendants)**

41. Plaintiffs reallege and incorporate Paragraphs 1 through 40 as if fully set forth herein.

42.     In connection with the Bitclub Offering, Defendants misrepresented and omitted to communicate material facts concerning the Bitclub Offering, and Bitclub Contract to Plaintiffs, including, but not limited to the Bitclub Misrepresentations and Bitclub Omissions.

43.     Defendants knew that the Bitclub Misrepresentations were false at time such misrepresentations were communicated to Plaintiffs.

44.     Defendant knew that they were omitting material facts concerning the Bitclub Offering when making the Bitclub Omissions during communications with Plaintiffs.

45.     Defendants intended for the Plaintiffs to rely upon the Bitclub Misrepresentations and Bitclub Omissions in order to induce Plaintiffs to invest in and purchase the Bitclub Offering and to enter into the Bitclub Contract.

46.     Plaintiffs reasonably and justifiably relied upon the Bitclub Misrepresentations and Bitclub Omissions by purchasing the Bitclub Offering and entering into the Bitclub Contract.

47.     Plaintiffs were induced into purchasing the Bitclub Offering and entering into the Bitclub Contract as a result of the Bitclub Misrepresentations and Bitclub Omissions. Plaintiffs would not have purchased the Bitclub Offering or entered into the Bitclub Contract had Defendants not made the Bitclub Misrepresentations and Bitclub Omissions.

48.     Plaintiffs have suffered damages as a direct and proximate cause of Defendants' fraud.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for rescission, compensatory damages, incidental and consequential damages, punitive and exemplary damages, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**COUNT V – BREACH OF CONTRACT**
**(By Plaintiff against All Defendants)**

49. Plaintiffs reallege and incorporate Paragraphs 1 through 48 as if fully set forth herein.

50. Plaintiffs each entered into a Bitclub Contract in connection with their investment in and purchase of the Bitclub Offering.

51. Defendants have breached the Bitclub Contract by, among other things, failing and refusing to pay dividends, bonuses, commissions and other compensation due to the Plaintiffs as required by the Bitclub Contract.

52. Plaintiffs have suffered damages as a direct and proximate cause of Defendants' breach of violation of the parties' contracts.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for compensatory damages, incidental and consequential damages, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**COUNT VI – UNJUST ENRICHMENT**
**(By Plaintiff against All Defendants)**

53. Plaintiffs reallege and incorporate Paragraphs 1 through 52 as if fully set forth herein.

54. Plaintiffs conferred benefits on the Defendants by investing in and purchasing the Bitclub Offering.

55. Defendants have failed to compensate Plaintiffs for their investment in the purchase of the Bitclub Offering.

56. Defendants were and are aware that Plaintiffs expected to be compensated for the benefits conferred upon Defendants by Plaintiffs.

57. Defendants have retained the benefits conferred by Plaintiffs notwithstanding

Defendants' Bitclub Misrepresentations and Bitclub Omissions, and Defendants' failure to honor the terms of the parties' contracts.

58. It is inequitable for Defendants to continue to retain the benefits conferred by Plaintiffs in connection with the Bitclub Offering, and Bitclub Contract, without compensating Plaintiffs.

59. Defendants have been unjustly enriched by Plaintiffs to Plaintiffs' detriment.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for compensatory damages, incidental and consequential damages, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiffs demands a trial by jury on all issues and claims so triable.

Dated: June 1, 2020

LAW OFFICES OF P. STERLING KERR

By: /s/ P. Sterling Kerr

P. STERLING KERR, ESQ.
Nevada Bar No. 003978
TAYLOR SIMPSON, ESQ.
Nevada Bar No. 13956
2450 St. Rose Parkway, Suite 120
Henderson, Nevada 89074
Telephone No. (702) 451–2055
Facsimile No. (702) 451-2077
Email: sterling@sterlingkerrlaw.com
Email: taylor@sterlingkerrlaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MINA DE ORO, LLC, *et. al*,

Plaintiffs,

vs.

MATTHEW BRENT GOETTSCHE, *et. al*,

Defendants.

Case No.: 2:20-cv-00994-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 21), filed by Defendant Matthew Brent Goettsche ("Mr. Goettsche"). Plaintiffs Mina De Oro, LLC and The Toy Chest, LLC (collectively, "Plaintiffs"), filed a Response, (ECF No. 28), and Mr. Goettsche filed a Reply, (ECF No. 29).

For the reasons discussed below, Mr. Goettsche's Motion to Dismiss is **GRANTED.**

## I. BACKGROUND

This case arises out of alleged federal securities violations in a multi-level bitcoin mining scheme. (*See generally*, Compl., ECF No. 1). Plaintiffs allege that Mr. Goettsche, in concert with the other defendant individuals in this case, fraudulently offered sale positions in a multi-level matrix and shares of a bitcoin mining business. (*Id.* ¶ 6). Defendants solicited these investments using their website www.bitclub.com ("Bitclub"). (*Id.*). To induce investors, Defendants falsely advertised a large crypto currency mining operation and returns on investment. (*Id.* ¶ 8). Relying upon these false statements, Plaintiffs each invested $250,000 into Bitclub's scheme. (*Id.* ¶ 10). However, instead of using the money as advertised, Plaintiffs allege that Defendants diverted the money for personal use. (*Id.* ¶ 9).

Plaintiffs now seek damages from the loss of their investment and the loss of the advertised investment returns. (*Id.* ¶ 14). The Complaint alleges the following causes of action against all Defendants: (1) violation of 17 C.F.R. § 240.10B-5; (2) violation of Nevada securities law under NRS 90.570; (3) common law fraud; (4) fraudulent inducement; (5) breach of contract; and (6) unjust enrichment. (*Id.* ¶¶ 17–59). Mr. Goettsche is also a defendant in a criminal case out of the District of New Jersey involving the same conduct. (Mot. Dismiss 2:27–3:9, ECF No. 1). Mr. Goettsche now moves to dismiss this case for lack of personal jurisdiction. (*Id.* 1:24–27).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, the plaintiff need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). District courts take the uncontroverted allegations in the complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* Nev. Rev. Stat. § 14.065; *Galatz v. Eighth Judicial Dist. Court*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum such that the "maintenance of the suit will not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken*

*v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts can give rise to either general or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." *Id.*

## III. DISCUSSION

Plaintiff alleges that the Court has specific personal jurisdiction[1] over all of the Defendants in this case for two reasons: (1) Plaintiffs are Nevada entities and the solicitations to purchase the fraudulent securities occurred in the State of Nevada; and (2) Defendants knew Plaintiffs were Nevada residents and purposefully availed themselves of the benefits of conducting business in the State of Nevada and solicited Nevada residents in the State of Nevada. (Compl. ¶ 5). In contrast, Defendant argues that the Court lacks personal jurisdiction because: (1) Plaintiffs impermissibly lump all of the Defendants together in their allegations and fail to set forth any allegations specifically regarding Mr. Goettsche's contacts with Nevada; (2) Plaintiffs themselves are Mr. Goettsche's only link to Nevada; and (3) Plaintiffs cannot demonstrate purposeful availment with regards to Mr. Goettsche. (Mot. Dismiss 5:16–8:23).[2]

As an initial matter, the Complaint does not make any allegations concerning Mr. Goettsche specifically; it merely alleges that Defendants collectively solicited Plaintiffs to

---

[1] The parties agree that the Court does not have general personal jurisdiction over Mr. Goettsche.

[2] Mr. Goettsche also argues that this case should be dismissed because Plaintiffs failed to engage in mediation prior to bringing this case, as required by Bitclub's Membership Agreement. (Mot. Dismiss 10:1–14:9, ECF No. 21). However, because the Court finds that it lacks personal jurisdiction over Mr. Goettsche, the Court need not discuss the mediation argument.

participate in a multi-level bitcoin mining scheme. (Compl. ¶ 6). Since the Complaint does not once mention Mr. Goettsche, other than in the caption, the Court cannot assess whether he has sufficient contacts with Nevada to establish personal jurisdiction. *See Medimpact Healthcare Systems, Inc. v. IQVIA Holdings, Inc.*, No. 19cv1865-GPC, 2020 WL 1433327, at *5 (S.D. Cal. Mar. 24, 2020) (dismissing a defendant for lack of personal jurisdiction when "plaintiffs [did] not specifically isolate the jurisdictional facts amongst the different . . . entities"); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 849 (N.D. Cal. 2018) (no personal jurisdiction over one individual defendant when the complaint grouped all defendants together).

However, even assuming that the generalized allegations in the Complaint individually apply to Mr. Goettsche, personal jurisdiction is still not established. Specific personal jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Personal jurisdiction must arise out of "contacts that the defendant *himself* creates with the forum State." *Waldon v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted). Further, personal jurisdiction cannot be established from the conduct of a plaintiff or third parties within the forum. *Id.* In other words, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Courts utilize a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Menken*, 503 F.3d at 1057. If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* However, "[i]f the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* In a securities case, the first prong of the specific jurisdiction analysis may be established either by purposeful direction or purposeful availment. *See, e.g.*, *SEC v. Jammin' Java Corp.*, No. 2:15-cv-08921-SVW-MRW, 2016 U.S. Dist. LEXIS 184773, at *23 (C.D. Cal. July 18, 2016). The Court will address each in turn.

**A. Purposeful Direction**

Under the purposeful direction analysis, district courts consider whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. When determining whether the defendant expressly aimed its conduct at the forum state, the court focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284).

As discussed above, the Complaint merely suggests that Defendants solicited investments from Nevada residents in the State of Nevada. (Compl. ¶ 5). The Complaint does not explain how this solicitation was an act expressly aimed at Nevada, rather than an act generally aimed at anyone with access to the internet. *Schwarzenegger*, 374 F.3d at 803. Therefore, on the face of the Complaint, the only link between Mr. Goettsche and Nevada is his connection to Plaintiffs, which is not enough to establish "purposeful direction." *Walden*, 571 U.S. at 284.

//

**B. Purposeful Availment**

To establish purposeful availment, a plaintiff must allege conduct "indicat[ing] an intent or purpose to serve the market in the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). "The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." *Holland Am. Line Inc.*, 485 F.3d at 459 (citing *Asahi Metal Indus. Co., Ltd*, 480 U.S. at 112). "Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Id.*

With respect to an entity's online presence, the Ninth Circuit has adopted a "sliding scale analysis that looks to how interactive an Internet website is for purposes of determining its jurisdictional effect." *Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008). Applying this approach, courts in this Circuit "recognize[] a distinction between passive websites, which simply display information, and interactive websites, which allow customers to exchange information with a business." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). Where a defendant's website is either passive or falls somewhere in the middle of the sliding scale, Courts require "something more" to establish specific jurisdiction. *Desert Rock Entm't II LLC v. D. Hotel & Suites, Inc.*, No. 2:15-cv-01417-MMD-VCF, 2016 U.S. Dist. LEXIS 58042, 2016 WL 1732724, at *3 (D. Nev. May 2, 2016) (quoting *Cybersell*, 130 F.3d at 418). "In determining whether a nonresident defendant has done 'something more,' [the Ninth Circuit has] considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum resident." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011).

In the present case, Plaintiffs do not specifically allege whether Bitclub's website is passive or interactive, but the Court assumes that the website fosters some level of interaction, since it allegedly solicited investments. Therefore, Bitclub's website likely falls somewhere in the middle of the sliding scale, and Plaintiffs must demonstrate 'something more,' besides the mere fact that Bitclub's website exists, to establish personal jurisdiction. *See Desert Rock*, 2016 WL 1732724, at *3. However, Plaintiffs' Complaint provides no allegations concerning the interactivity level of Bitclub's website, its geographic scope, or whether Bitclub or Mr. Goettsche individually targeted either Plaintiff. Plaintiff's Response to the Motion to Dismiss offers no further clarification; it cites the *Mavrix* standard, but neglects to provide any explanation of how Mr. Goettsche intended to "serve the market" in Nevada. *Asahi Metal*, 480 U.S. at 112, 107. Accordingly, Plaintiffs fail to establish any purposeful availment.

Because Plaintiffs demonstrated neither that Mr. Goettsche purposefully directed his activities at Nevada, nor that he purposefully availed himself of the privileges of conducting activities in Nevada, the first prong of the specific personal jurisdiction analysis is not met. Therefore, Mr. Goettsche's Motion to Dismiss is granted, and Plaintiffs' claims against Mr. Goettsche are dismissed for lack of personal jurisdiction.

**C. Leave to Amend**

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court finds that Plaintiffs may be able to plead additional facts that could cure the Complaint's current deficiencies related to personal jurisdiction. *See, e.g.*, *Fluidigm Corp. v. bioMerieux SA*, No. 19-cv-02716-LHK, 2019 WL 6612063, at *7 (N.D. Cal. Dec. 5, 2019) (granting leave to amend after dismissing the case for lack of personal jurisdiction when "an opportunity to amend the Complaint would not be futile"). Accordingly, the Court will grant Plaintiffs leave to file an

amended complaint. Plaintiffs shall file their amended complaint within twenty-one (21) days of the entry of this Order.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Mr. Goettsche's Motion to Dismiss, (ECF No. 21), is **GRANTED**. Plaintiffs' claims against Mr. Goettsche are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that if Plaintiffs seek to amend their Complaint for the purposes of establishing personal jurisdiction, Plaintiffs shall file an amended complaint within twenty-one (21) days from the entry of this order.

**DATED** this 28 day of March, 2022.

Gloria M. Navarro, Chief Judge
United States District Court

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
TAYLOR SIMPSON, ESQ.
Nevada Bar No. 13956
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: taylor@kerrsimpsonlaw.com
*Attorneys for Plaintiffs*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| MINA DE ORO, LLC, a Nevada limited liability company; THE TOY CHEST, LLC a Nevada limited liability company,<br>Plaintiffs,<br><br>v.<br><br>MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations,<br><br>Defendants. | Case No. 2:20-cv-00994-CDS-VCF |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiffs, MINA DE ORO, LLC, THE TOY CHEST, LLC (hereinafter collectively referred to as “Plaintiffs”) by and through its attorneys, the Law Offices of P. Sterling Kerr, and complain and allege against Defendants MATTHEW BRENT GOETTSCHE, JOBEDIAH SINCLAIR WEEKS, JOSEPH FRANK ABEL, SILVIU CATALIN BALACI and BITCLUB, an unknown entity, (hereinafter collectively referred to as “Defendants”) as follows:

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**NATURE OF ACTION**

1. Plaintiffs brings this action against Defendants to seek relief from their violations of Rule 10b-5 under the Securities Exchange Act of 1934, 15 U.S.C. § *78a, et seq*., codified at 17 C.F.R. § 240.10b-5 (the "Federal Claims"). Plaintiffs additionally asserts pendent claims arising out of the same operative facts as the Federal Claims for violation of NRS 90.570, fraud, negligent misrepresentation, fraudulent inducement, breach of contract, and unjust enrichment (the "State Law Claims").

**PARTIES**

2. Plaintiffs are Nevada limited liability companies domiciled in Nevada and subject to Nevada law and jurisdiction.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction of this action pursuant to 28. U.S.C. § 1331 based upon the existence of a question arising under particular federal statutes and regulations, namely 15 U.S.C. § 78a, *et seq*., and 17 C.F.R. § 240.10b-5. In addition, the Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332, as the action is between parties of diverse citizenship and the amount is controversy exceeds $75,000. Plaintiffs also invokes the supplemental jurisdiction of this Court to determine the State Law Claims raised herein pursuant to 28 U.S.C. § 1367.

4. Venue in the District of Nevada is proper pursuant to 28 U.S.C. § 1391(b) because certain of the Federal Claims and the State Law Claims arose against Nevada entities formed and whose resident agents reside in Clark County, State of Nevada.

5. This Court has personal jurisdiction over Defendants, in Nevada because:

a) The Plaintiff entities are Nevada entities and the solicitations to purchase fraudulent securities occurred in the State of Nevada to the managers and members of these entities at the direction of Defendant Goettsche.

b) The Defendants and specifically, Defendant Goettsche, during a period from April 2014 through December 2019 engaged in a fraudulent scheme that solicited money from investors in exchange for purported cryptocurrency mining pools and rewarded investors for

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

recruiting other new investors into the scheme. In a recent press release from the US Attorneys office in the District of New Jersey, the US attorney announced that Gordon Beckstead, a resident of Henderson, Nevada, had pleaded guilty to conspiracy to commit money laundering and aiding in the preparation of a false tax return. As part of the guilty plea Beckstead admitted conspiring with Goettsche and others to launder funds earned by Goettsche through his operation of the Bitclub Network. Beckstead stated that at Goettsche's direction, that Beckstead created and controlled various entities that were used by Goettsche and others to shield Goettsche's association with the Bitclub Network and to disguise income derived from the Bitclub Network.

c) The fraudulent tax returns for the benefit of Goettsche were prepared by his CPA Beckstead in the State of Nevada and the conspiracy was directed by Goettsche in the State of Nevada with Nevada individuals.

d) Beckstead the former Nevada CPA set up various Nevada entities wherein Goettsche held assets purchased with the fraudulent funds obtained by operating the Bitclub Network scheme. Goettsche directed Beckstead to set up the Nevada entities and directed the purchase of the assets with the fraudulent Bitclub Network funds, including real estate located in Nevada.

**FACTS COMMON TO ALL COUNTS**

6. During the spring of 2018, Defendants engaged in direct and indirect solicitation of the Plaintiff entities to participate in a Bitcoin ("BTC") related multi-level BTC mining scheme ("the Bitclub Offering") by offering for sale positions in a Multi-level matrix and shares of BTC mining business issued by Defendants. Defendants engaged in these private and public solicitations through a website (www.bitclub.com ("Bitclub") wherein the Defendants created and maintained a website for the Bitclub Offering, and through independent business operators within the Bitclub scheme through the means or instrumentalities of interstate commerce, including email and the internet.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

7. In connection with the Bitclub Offering, Defendants had and owed to Plaintiff entities a duty to disclose and provide truthful and honest facts and information concerning the Bitclub Offering.

8. In an effort to solicit the Plaintiff entities and to induce them into investing in the Bitclub Offering, Defendants, acting both individually and as the controlling members of the Bitclub Scheme made the following untrue statements of material fact to Plaintiffs (the "Bitclub Misrepresentation"):

(a) misleading figures regarding the amount of crypto currency mining operations in place;

(b) misleading figures regarding the amount of crypto currency being mined at Bitclub controlled mining operations;

(c) misleading figures and documentation regarding the amount of future profit to be derived from the Bitcoin mining operations;

(d) fraudulent statements from Defendants and Defendants' independent business operators within the multi-level marketing scheme regarding commissions to be paid for joining the Bitclub Scheme and recruiting others to join the Bitclub Scheme and invest in the Bitclub Offering;

(e) misleading statements regarding future operations and investments by the Bitclub management;

(f) untrue and misleading statements regarding access to funds invested in the Bitclub Offering through an internet based website.

9. At the time the Bitclub Misrepresentations were made to Plaintiffs by the Defendants, the Defendants also knew, or reasonably should have known, of the following materials facts that Defendants omitted to communicate to the Plaintiffs ("the Bitclub

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Omissions"):

(a) risk involved in crypto currency mining operations concerning costs of mining, reduced mining rewards because of competition and volatility of the BTC and crypto currency markets;

(b) illegality of the Bitclub Scheme as it relates to the multi-level marketing scheme;

(c) illegality of the Bitclub Offering and failure of Bitclub and Defendants to register the Bitclub Offering as a security with the Securities Exchange Commission and the State of Nevada Securities Division;

(d) that proceeds from the Bitclub Offering and the multi-level Bitclub Scheme were being converted by the Defendants for their personal use rather than the acquisition of promised crypto currency mining equipment.

10. In reasonable and justified reliance upon the Bitclub Misrepresentations and Bitclub Omissions made by Defendants, each of the Plaintiffs transmitted BTC or cash to Defendants to purchase a specified amount of the Bitclub Offering as follows:

a) Plaintiff, MINA DEL ORO, LLC, invested $250,000.00 USD to a Bitclub representative for purchase of the Bitclub Offering;

(b) Plaintiff THE TOY CHEST, LLC, invested $250,000.00 USD to a Bitclub representative for purchase of the Bitclub Offering.

11. In reasonable and justified reliance upon the Bitclub Misrepresentations and Bitclub Omissions made by Defendants, the Defendants presented and each of the Plaintiffs entered into a Bitclub Scheme investor contract as set forth in the Bitclub Scheme website ("Bitclub Contract").

12. Plaintiffs would not have purchased the Bitclub Offering or entered into the Investor Contracts if Plaintiffs had known that the Bitclub Misrepresentations were false or if

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

Plaintiffs had been aware of the Bitclub Omissions.

13. Subsequent to their solicitation and sale of the Biclub Offering to Plaintiffs, Defendants have materially breached and defaulted on their obligations to Plaintiffs under the parties' contracts by, among other actions:

(a) failing and refusing to pay dividends, bonuses and other compensation due to the Plaintiffs as required by the investor contracts;

(b) repeatedly misrepresenting and concealing the true nature and status of the Plaintiff's investments in Bitclub as well as the finances, operations and legal status of Bitclub; and

(c) violating various state and federal laws in connection with the offer and sale of the Bitclub Offering to the Plaintiffs and other investors in Bitclub.

14. As a direct and proximate consequence of the Defendants' unlawful conduct as described herein, the Plaintiffs have and will continue to incur substantial damages. The Plaintiff's damages from the loss of their investment due to the Defendants' actions and inactions include the $250,000.00 USD investment of each of the Plaintiffs and the mined BTC and loss of investment returns given the value of BTC currently, excluding unpaid dividends, interest, attorney's fees and costs of litigation.

15. Plaintiffs have made repeated demands upon Defendants to rescind the unlawful transactions at issue and to return the monies that Defendants fraudulently obtained from Plaintiffs. To date, Defendants have shut down the Bitclub website and failed and refused to return the Plaintiff's monies, and have continued to engage in their unlawful actions and inactions.

16. Plaintiffs have fulfilled or performed all conditions precedent to the filing of this action, and/or such conditions precedent have been waived by Defendants.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**COUNT I – VIOLATION OF 17 C.F.R. § 240.10B-5**
**(By All Plaintiffs Against All Defendants)**

17. Plaintiffs reallege and incorporate Paragraphs 1 through 16 as if fully set forth herein.

18. The Bitclub Offering offered for sale by Defendants and purchased by Plaintiffs constitute securities under the Securities Act of 1933.

19. Defendants made untrue statement of material facts to Plaintiffs concerning the Bitclub Offering, including, but not limited to, the Bitclub Misrepresentations, in connection with the sale of the Bitclub Offering.

20. Defendants were aware of and omitted to communicate certain material facts concerning the Bitclub Offering to Plaintiffs, including, but not limited to, the Bitclub omissions, in connection with the sale of the Bitclub Offering.

21. The Bitclub Misrepresentations and Bitclub Omissions made by Defendants constitute acts, practices, or a course of business that operated as a fraud and deceit upon Plaintiffs.

22. Defendants used means of instrumentalities of interstate commerce, including the mail, email and the internet, in connection with the Bitclub Misrepresentations and Bitclub Omissions, and to directly or indirectly employ a device, scheme, or artifice to convince Plaintiffs to purchase the Bitclub Offering.

23. Defendants obtained BTC, money and/or other property from Plaintiffs as a result of the Bitclub Misrepresentations and Bitclub Omissions.

24. The Bitclub Misrepresentations and Bitclub Omissions of the Defendants constituted securities fraud in violation of 17 C.F.R. § 240.10b-5.

25. Plaintiffs have suffered damages as a direct and proximate cause of Defendants'

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

violation of 17 C.F.R. § 240.10b-5.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for compensatory damages, incidental and consequential damages, punitive and exemplary damage, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**COUNT II – VIOLATION NEVADA SECURITIES LAW**
**NRS 90.570, et. al.**
**(By Plaintiffs Against all Defendants)**

26. Plaintiffs reallege and incorporate Paragraphs 1 through 25 as if fully set forth herein.

27. This is a claim by Plaintiffs, Nevada domiciled entities against Defendants for violation of NRS 90.570 and all other applicable securities statutes under NRS Chapter 90.

28 The Bitclub Offering and the Bitclub multi-level marketing positions purchased by Plaintiffs from Defendants constitutes an "investment" under NRS Chapter 90.

29. In connection with the Bitclub Offering to Plaintiffs, Defendants made the following misrepresentations and omission of fact:

(a) misleading figures regarding the amount of crypto currency mining operations in place;

(b) misleading figures regarding the amount of crypto currency being mined at Bitclub controlled mining operations;

(c) misleading figures and documentation regarding the amount of future profit to be derived from the Bitcoin mining operations;

(d) fraudulent statements from Defendants and Defendants' independent business operators within the multi-level marketing scheme regarding commissions to be paid for joining the Bitclub Scheme and recruiting others to join the Bitclub

Scheme and invest in the Bitclub Offering;

(e) misleading statements regarding future operations and investments by the Bitclub management;

(f) failing and refusing to pay dividends, bonuses and other compensation due to the Plaintiffs as required by the investor contracts;

(g) repeatedly misrepresenting and concealing the true nature and status of the Plaintiff's investments in Bitclub as well as the finances, operations and legal status of Bitclub; and

(h) violating various state and federal laws in connection with the offer and sale of the Bitclub Offering to the Plaintiffs and other investors in Bitclub.

30. Defendants made the Bitclub Misrepresentations and Bitclub Omissions to Plaintiffs with reckless disregard for the truth of their communications.

31. Defendants knew or reasonably should have known that Plaintiffs would justifiably and reasonably rely on the Bitclub Misrepresentations and Bitclub Omissions.

32. Plaintiffs justifiably and reasonably relied on the Bitclub Misrepresentations and the Bitclub Omissions in connection with his purchase of Bitclub Offering.

33. Defendant violated NRS 90.570 by causing Plaintiffs to invest in the Bitclub Offering in reliance upon the Bitclub Misrepresentations and Bitclub Omissions.

34. Plaintiffs have suffered damages as a direct and proximate cause of Defendants' violations of NRS 90.570 and other securities laws set forth in NRS Chapter 90.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for actual compensatory damages, for rescission of Plaintiffs' purchase of the Bitclub Offering, incidental and consequential damages, punitive and exemplary damages, pre-and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**COUNT III – COMMON LAW FRAUD**
**(By Plaintiff against All Defendants)**

35. Plaintiffs reallege and incorporate Paragraphs 1 through 34 as if fully set forth herein.

36. In connection with the Bitclub Offering, Defendants misrepresented and omitted to communicate material facts concerning the Bitclub Offering to Plaintiffs, including, but not limited to, the Bitclub Misrepresentations and Bitclub Omissions.

37. Defendants knew they were omitting material facts concerning the Bitclub Offering in order to induce Plaintiffs to invest in and purchase the Bitclub Offering.

38. Plaintiffs reasonably and justifiably relied upon the Bitclub Misrepresentations and Bitclub Omissions by investing in and purchasing the Bitclub Offering.

39. Plaintiffs were induced into purchasing the Bitclub Offering as a result of the Bitclub Misrepresentations and Bitclub Omissions, and Plaintiffs would not have purchased the Bitclub Offering had Defendants not made the Bitclub Misrepresentation and Bitclub Omissions.

40. Plaintiffs have suffered damages as a direct and proximate cause of Defendants' fraud.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for rescission, compensatory damages, incidental and consequential damages, punitive and exemplary damages, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**COUNT IV – FRAUDULENT INDUCEMENT**
**(By Plaintiff against All Defendants)**

41. Plaintiffs reallege and incorporate Paragraphs 1 through 40 as if fully set forth herein.

42. In connection with the Bitclub Offering, Defendants misrepresented and omitted

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

to communicate material facts concerning the Bitclub Offering, and Bitclub Contract to Plaintiffs, including, but not limited to the Bitclub Misrepresentations and Bitclub Omissions.

43. Defendants knew that the Bitclub Misrepresentations were false at time such misrepresentations were communicated to Plaintiffs.

44. Defendant knew that they were omitting material facts concerning the Bitclub Offering when making the Bitclub Omissions during communications with Plaintiffs.

45. Defendants intended for the Plaintiffs to rely upon the Bitclub Misrepresentations and Bitclub Omissions in order to induce Plaintiffs to invest in and purchase the Bitclub Offering and to enter into the Bitclub Contract.

46. Plaintiffs reasonably and justifiably relied upon the Bitclub Misrepresentations and Bitclub Omissions by purchasing the Bitclub Offering and entering into the Bitclub Contract.

47. Plaintiffs were induced into purchasing the Bitclub Offering and entering into the Bitclub Contract as a result of the Bitclub Misrepresentations and Bitclub Omissions. Plaintiffs would not have purchased the Bitclub Offering or entered into the Bitclub Contract had Defendants not made the Bitclub Misrepresentations and Bitclub Omissions.

48. Plaintiffs have suffered damages as a direct and proximate cause of Defendants' fraud.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for rescission, compensatory damages, incidental and consequential damages, punitive and exemplary damages, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**COUNT V – BREACH OF CONTRACT**
**(By Plaintiff against All Defendants)**

49. Plaintiffs reallege and incorporate Paragraphs 1 through 48 as if fully set forth

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

herein.

50. Plaintiffs each entered into a Bitclub Contract in connection with their investment in and purchase of the Bitclub Offering.

51. Defendants have breached the Bitclub Contract by, among other things, failing and refusing to pay dividends, bonuses, commissions and other compensation due to the Plaintiffs as required by the Bitclub Contract.

52. Plaintiffs have suffered damages as a direct and proximate cause of Defendants' breach of violation of the parties' contracts.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for compensatory damages, incidental and consequential damages, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**COUNT VI – UNJUST ENRICHMENT**
**(By Plaintiff against All Defendants)**

53. Plaintiffs reallege and incorporate Paragraphs 1 through 52 as if fully set forth herein.

54. Plaintiffs conferred benefits on the Defendants by investing in and purchasing the Bitclub Offering.

55. Defendants have failed to compensate Plaintiffs for their investment in the purchase of the Bitclub Offering.

56. Defendants were and are aware that Plaintiffs expected to be compensated for the benefits conferred upon Defendants by Plaintiffs.

57. Defendants have retained the benefits conferred by Plaintiffs notwithstanding Defendants' Bitclub Misrepresentations and Bitclub Omissions, and Defendants' failure to honor

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

the terms of the parties' contracts.

58. It is inequitable for Defendants to continue to retain the benefits conferred by Plaintiffs in connection with the Bitclub Offering, and Bitclub Contract, without compensating Plaintiffs.

59. Defendants have been unjustly enriched by Plaintiffs to Plaintiffs' detriment.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter a judgment against Defendants for compensatory damages, incidental and consequential damages, pre- and post-judgment interest, attorney's fees and costs of litigation, and any other relief that the Court deems appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiffs demands a trial by jury on all issues and claims so triable.

DATED this 18th day of April, 2022.

KERR SIMPSON ATTORNEYS AT LAW

/s/ Sterling Kerr
P. STERLING KERR, ESQ.
Nevada Bar No. 003978
TAYLOR SIMPSON, ESQ.
Nevada Bar No. 13956
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: taylor@kerrsimpsonlaw.com
*Attorneys for Plaintiffs*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on April 18, 2022, a true and correct copy of FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL was served to the following at their last known address(es), facsimile numbers and/or e-mail/other electronic means, pursuant to:

X
______ **BY E-MAIL AND/OR ELECTRONIC MEANS**: addressees (s) having consented to electronic service, I via e-mail, Electronic Service through the Court's electronic filing system, or other electronic means to the e-mail address(es) of the addressee(s).

Adam Hosmer-Henner, Esq
Phil Mannelly, Esq.
Chelsea Latino, Esq.
**McDonald Carano LLP**
100 West Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Benajmin J. A. Sauter, Esq.
Amanda N. Tuminelli, Esq.
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
(212) 488-1288
Benjamin.sauter@kobrekim.com
Amanda.tuminelli@korbekim.com

**Jobediah Sinclair Weeks**
07-577168
Essec County Correctional Facility
354 Doremus Ave.
Newark, NJ 07105
PRO SE

/s/ Lisa Peters
An employee of the KERR SIMPSON ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Mina De Oro, LLC, and The Toy Chest, LLC,

Plaintiffs

v.

Matthew Brent Goettsche, et al.,

Defendants

Case No.: 2:20-cv-00994-CDS-VCF

**Order Granting Defendant's Motion to Dismiss**

[ECF No. 35]

This case involves alleged violations of federal securities law related to a multi-level bitcoin scheme. *See generally* First-Amended Complaint (FAC), ECF No. 33. Plaintiffs bring this action against defendants Matthew Brent Goettsche, *et al.* Last year, Goettsche filed a motion to dismiss the original complaint for lack of personal jurisdiction (ECF No. 21), which was granted. ECF No. 30. Plaintiffs then filed their FAC on April 18, 2022. Goettsche now moves to dismiss the FAC, re-asserting lack of personal jurisdiction. Plaintiffs aver that the inclusion of additional information regarding Goettsche's contacts with the state of Nevada in the FAC are sufficient to survive dismissal on jurisdictional grounds. Having considered the moving papers, and the reasons set forth herein, I grant defendant's motion to dismiss because the plaintiffs have not met their burden of demonstrating that this court has personal jurisdiction over Goettsche.

## I. Background information

I incorporate the summary of the case as set forth in the Honorable United States District Judge Gloria M. Navarro's order dismissing the original complaint in Goettsche's favor. ECF No. 30 at 1–2. Following dismissal, plaintiffs filed an amended complaint (ECF No. 33),

modifying the original complaint by adding in the following information to the jurisdiction and venue section of the FAC:

1. The Plaintiff entities are Nevada entities and the solicitations to purchase fraudulent securities occurred in the State of Nevada to the managers and members of these entities at the direction of Defendant Goettsche. ECF No. 33 at 2.

2. The Defendants and specifically, Defendant Goettsche, during a period from April 2014 through December 2019 engaged in a fraudulent scheme that solicited money from investors in exchange for purported cryptocurrency mining pools and rewarded investors for recruiting other new investors into the scheme. In a recent press release from the US Attorney[']s office in the District of New Jersey, the US [A]ttorney announced that Gordon Beckstead, a resident of Henderson, Nevada, had pleaded guilty to conspiracy to commit money laundering and aiding in the preparation of a false tax return. As part of the guilty plea Beckstead admitted conspiring with Goettsche and others to launder funds earned by Goettsche through his operation of the Bitclub Network. Beckstead stated that at Goettsche's direction, that Beckstead created and controlled various entities that were used by Goettsche and others to shield Goettsche's association with the Bitclub Network and to disguise income derived from the Bitclub Network. *Id.* at 2–3.

3. The fraudulent tax returns for the benefit of Goettsche were prepared by his CPA Beckstead in the State of Nevada and the conspiracy was directed by Goettsche in the State of Nevada with Nevada individuals. *Id.* at 3.

4. Beckstead[,] the former Nevada CPA[,] set up various Nevada entities wherein Goettsche held assets purchased with the fraudulent funds obtained by operating the Bitclub Network scheme. Goettsche directed Beckstead to set up the Nevada entities and directed the purchase of the assets with the fraudulent Bitclub Network funds, including real estate located in Nevada. *Id.*

No additional information regarding Goettsche and his connections to Nevada were included in the FAC. Thereafter, Goettsche filed this motion, seeking dismissal under Federal Rule of Civil Procedure 12(b)(2), arguing that this court lacks general and specific jurisdiction over him. ECF No. 35. Plaintiff opposes the motion. ECF No. 37.

## II. Legal framework

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)). "When a defendant moves to

dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig. v. Oneok, Inc.*, 715 F.3d 716, 741 (9th Cir. 2013). In cases in which the motion is based on written materials, rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Bryton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009). In such a case, "we only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). On a prima facie showing, the court resolves all contested facts in favor of the non-moving party. *Oneok*, 715 F.3d at 741; *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (if conflicted facts are contained in the parties' affidavits, the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction has been established).

A plaintiff may not simply rest on the "bare allegations of [the] complaint." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977)). If the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits or declarations. *See AT&T Co.*, 94 F.3d at 588; accord *Caruth*, 59 F.3d at 127–28 (absent an evidentiary hearing, this court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction.")).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). Nevada's long-arm statute, set forth at Nev. Rev. Stat. § 14.065, coincides with federal due process requirements. Those requirements mandate

that non-resident defendants have "minimum contacts" with Nevada "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).

General personal jurisdiction is premised on a defendant's relationship to the forum state. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted). The defendant must engage in "continuous and systematic general business contacts," *Hall*, 466 U.S. at 416, that "approximate physical presence" in the forum state. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir.2011) (quoting *Int'l Shoe*, 326 U.S. at 318). In order to determine if a nonresident defendant's contacts are sufficiently substantial, continuous, and systematic, courts evaluate a number of factors, including their "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006). The standard for general jurisdiction "is an *exacting* standard, as it should be, because a finding of general jurisdiction permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801 (emphasis added). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 137 S.Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). Specific jurisdiction, on the other hand, "focuses on the

relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984) (internal quotation marks and citation omitted). In the Ninth Circuit, a three-part test is applied to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate. *Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). First, the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. *Id.* Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. *Id.* Finally, the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable. *Id.*

**III. The parties' arguments**

Goettsche argues that this court lacks both specific and general personal jurisdiction over him, despite the plaintiffs' additions to the FAC. *See generally* ECF No. 35. Specifically, Goettsche argues that the added language about him directing certain activities to customers in Nevada through a website and directing a separate money laundering conspiracy does not derive from, is not connected with, and does not arise from the federal securities violations and related state claims set forth in the FAC—thus, the court lacks specific jurisdiction. *Id.* at 7–8. Moreover, Goettsche contends that plaintiffs failed to cure the defect of lumping all the defendants together, as identified in Judge Navarro's dismissal order. ECF No. 30.

Plaintiffs respond that the FAC does, in fact, establish personal jurisdiction—both specific and general—over Goettsche. They identify four allegations from the FAC in support of their position. *See generally* ECF No. 37 at 7–8. First, plaintiffs claim that their entities are Nevada entities, and they received "solicitations to purchase fraudulent securities" "in the State of Nevada" "at the direction of [] Goettsche." *Id.* at 7. Second, plaintiffs incorporate information

from a press release from the United States Attorney's Office for the District of New Jersey, setting forth information regarding the actions of Gordon Beckstead, a Nevada resident, and his role in a criminal conspiracy involving Goettsche. *Id.* Third, plaintiffs claim that Beckstead prepared fraudulent tax returns for the benefit of Goettsche in the State of Nevada and that the aforementioned criminal "conspiracy was directed by Goettsche in the State of Nevada with Nevada individuals." *Id.* Last, plaintiffs assert that Beckstead set up various Nevada entities wherein Goettsche held assets, including real estate in Nevada, purchased with fraudulent funds from the unlawful Bitcoin scheme set forth in the FAC. *Id.* at 7–8.

In his reply,[1] Goettsche also argues that plaintiffs improperly add information and allegations beyond the four corners of the FAC that I therefore cannot consider in my resolution of this motion. ECF No. 38 at 4–6. Further, Goettsche argues that plaintiffs' allegations that Goettsche previously managed (now inactive) business entities[2] in Nevada—which were allegedly used to hold Nevada real estate and assets as part of a money laundering and tax fraud scheme—with a registered agent who is not part of this action, are insufficient to establish general jurisdiction. *Id.*

[1] Goettsche only addresses general jurisdiction in his reply because plaintiffs, for the first time, argue in their response that the court has both specific and general jurisdiction over him. In response to Goettsche's first motion to dismiss, plaintiffs conceded that there was no general jurisdiction. *See* ECF No. 28 ("Plaintiffs do not dispute that this [c]ourt does not have general jurisdiction over [] Goettsche."). I address plaintiffs' general-personal-jurisdiction argument below.

[2] I consider only what is contained within the four corners of the FAC. I decline to consider the exhibits that accompanied plaintiff's opposition to the motion. The court is allowed to inquire into "[the plaintiff's] pleadings and affidavits" to determine if there is a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). The exhibits are not affidavits, nor are they incorporated into affidavits, so I need not and do not consider them.

**IV. Discussion**

*a. Plaintiffs have not met their burden of establishing that the court has jurisdiction.*

*i. Specific jurisdiction*

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the **defendant's contacts** with the forum." *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8 (emphasis added). I am required to focus on the relationship between the nonresident defendant (Goettsche), the forum, and the litigation (*Walden v. Fiore*, 571 U.S. 277, 284 (2014)), and must decide if the "issues deriv[e] from, or [are] connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotation marks and citation omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [s]tate." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781.

The only new information in the FAC discussing Goettsche is set forth under the header "Jurisdiction and Venue." ECF No. 33 at 2–3. Goettsche is not named or discussed in any other section of the complaint. I find that this additional information about Goettsche is insufficient to meet the Ninth Circuit's three-part test, as the plaintiffs have not demonstrated that Goettsche purposely availed himself of the forum state. *Schwarzenegger*, 374 F.3d at 802. Conclusorily stating that activities were conducted "at the direction of [] Goettsche" is not enough to meet the plaintiffs' jurisdictional burden. ECF No. 33 at 2.

The first allegation (that Goettsche directed to Nevada-resident plaintiffs solicitations to purchase fraudulent securities) does not demonstrate a purposeful activity or transaction with Nevada or its residents, nor does it demonstrate that Goettsche purposely availed himself of the privilege of conducting activities in Nevada. Like the original complaint, the FAC "does not explain how this solicitation was an act expressly aimed at Nevada, rather than an act generally aimed at anyone with access to the internet." ECF No. 30 at 5 (citing *Schwarzenegger*, 374 F.3d at

803). Consequently, "the only link between [] Goettsche and Nevada is his connection to [p]laintiffs, which is not enough to establish 'purposeful direction.'" *Id.* (citing *Walden*, 571 U.S. at 284). At best, it suggests that Goettsche directed *others* to solicit and sell fraudulent securities in Nevada and elsewhere. But the plaintiffs fail to plead any specific information about Goettsche's activities in, directed at, or connected to Nevada.

The remaining three allegations in the FAC suffer from the same deficiency. In fact, the second allegation fully sets forth how Beckstead engaged in purposeful activities or transitions within Nevada, but Beckstead's actions and activities are irrelevant, as he is neither a party to this case nor a Nevada resident. Plaintiffs argue that they specifically pled that Goettsche purposely directed conduct towards Nevada, but a review of the FAC reveals that it states that the **defendants** (generally, as a group) engaged in various activities related to the Bitcoin scheme. *See* ECF No. FAC at ¶¶ 6–59. Goettsche is not named or discussed in any other section of the complaint. Stated otherwise, plaintiffs failed to cure the defect in the original complaint of lumping all the defendants together. ECF No. 30 at 4. This lack of information precludes me from determining if Goettsche had sufficient contacts with Nevada or not. *See Marsh v. Zaazoon Solutions, LLC*, 2012 WL 92226, at *9 (N.D. Cal. Mar. 20, 2012) (finding that plaintiffs did not meet their burden to show specific personal jurisdiction over individual defendants when the second amended complaint was "devoid of any allegations of a specific act" and instead contained only allegations that the individual defendants who were principals and members of companies that operated the scam at issue and that the individual defendants actively participated in the misconduct).

The third allegation is likewise deficient; it provides no further information about how Goettsche allegedly purposefully availed himself of Nevada or how he "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum

state." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.1990) (internal quotation marks and citation omitted). Like the second allegation, this information shows Beckstead's purposeful availment, not Goettsche's. Even if Goettsche benefited from Beckstead's action, it does not show how or when Goettsche conducted business in Nevada, nor does it demonstrate that he "performed some type of affirmative conduct which allows or promotes the transaction of business within [Nevada]." *Id.* (internal quotation marks and citation omitted).

The last allegation—that Beckstead set up various Nevada entities in which Goettsche held assets, including real estate, that were purchased with fraudulent funds from the unlawful Bitcoin scheme—fares no better in establishing specific personal jurisdiction over Goettsche. *Id.* at 7–8. For example, the plaintiffs plead no information regarding how, if, or when Goettsche traveled to Nevada to set up the unidentified entities or to buy the unidentified real estate or assets. Due process requires that "a defendant . . . have certain minimum contacts with [a forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316. Finding specific personal jurisdiction based on vague allegations without dates, times, or any other information regarding Goettsche's alleged contacts with Nevada would offend the traditional notions of fair play and substantial justice, as it would not be reasonable for him to expect being hauled into court in this forum. Accordingly, plaintiffs have failed to establish that this court has specific personal jurisdiction over Goettsche.

*ii. General jurisdiction*

For this court to exercise general jurisdiction over Goettsche, the plaintiffs must show that he engaged in "continuous and systematic general business contacts" in the forum to the extent that those contacts essentially equate to an actual physical presence in the forum state. *Helicopteros Nacionales*, 466 U.S. at 416 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437

(1952)). The Ninth Circuit describes this as "an exacting standard" because it permits a defendant to be hauled into court in the forum state to answer for any of its activities anywhere in the world. *Schwarzenegger*, 374 F.3d at 801 (9th Cir. 2004) (citing *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir.1986) (collecting cases in which general jurisdiction was lacking despite defendants' significant contacts with forum)). Plaintiffs have failed to meet the exacting standard establishing general jurisdiction over Goettsche. Instead, plaintiffs summarily assert that Goettsche engaged in continuous and systematic general business contacts in Nevada. In the mere one and a half paragraphs that plaintiffs include about asserting general jurisdiction over Goettsche, they do not provide this court with any admissible evidence to support their argument. Accordingly, plaintiffs have failed to establish that this court has general personal jurisdiction over Goettsche.[3]

*b. Plaintiffs' request to conduct jurisdictional discovery is denied.*

As an alternative to dismissal, plaintiffs seek to conduct jurisdictional discovery. ECF No. 37 at 18–19. District courts have broad discretion in controlling discovery. *Blackburn v. United States*, 100 F.3d 1426, 1436 (9th Cir. 1996). A district court should grant a request for jurisdictional discovery "whe[n] pertinent facts bearing on the question of jurisdiction are controverted or whe[n] a more satisfactory showing of the facts is necessary." *Data Disc., Inc.*, 557 F.2d at 1285 n.1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). Courts within the Ninth Circuit require a plaintiff to establish a "colorable basis" for personal jurisdiction before granting jurisdictional discovery. *See, e.g.*, *Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007); *Modesto City Schools v. Riso Kagaku Corp.*, 157 F. Supp. 2d 1128, 1130 (E.D. Cal. 2001). A "colorable showing" has been interpreted to mean something less than a

[3] Because I find that I lack personal jurisdiction over Goettsche, I do not address Goettsche's request to enforce the arbitration agreement or his request to stay the proceedings pending his criminal case in New Jersey.

prima facie showing but requires a plaintiff to come forward with "some evidence" tending to establish personal jurisdiction over the defendant." *Mitan*, 497 F. Supp. 2d at 1119. However, jurisdictional discovery need not be allowed if it is merely a "fishing expedition." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 996 (C.D. Cal. May 29, 2013) (internal quotation marks and citations omitted). The Ninth Circuit has upheld denials of requests for jurisdictional discovery when "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (internal citation omitted).

Here, plaintiffs suggest that jurisdictional discovery *might* reveal that Goettsche has ties to Nevada and *might* reveal what, if any, of plaintiffs' monies were converted for Goettsche's personal use. ECF No. 37 at 19. This case has been pending for more than two years. Plaintiffs did not seek to conduct jurisdictional discovery in response to Goettsche's first motion to dismiss, nor did they seek that relief in relation to filing the FAC. Further, plaintiffs have not provided this court with any information regarding the substance of what they believe jurisdictional discovery would actually reveal, the scope of their discovery request, or what they would specifically seek if I granted jurisdictional discovery. Without more, and at this stage of litigation, I find that the plaintiffs' request for jurisdictional discovery appears to be fishing expedition and would therefore not be appropriate. Accordingly, plaintiffs' request is denied.

**V. Conclusion**

For the reasons set forth herein, Goettsche's motion to dismiss **(ECF No. 35) is GRANTED**.

DATED: October 17, 2022

______________________________
Cristina D. Silva
United States District Judge

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
C. ROBERT PETERSON, ESQ.
Nevada Bar No. 11680
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: bob@kerrsimpsonlaw.wom
*Attorneys for Plaintiff*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

THE TOY CHEST, LLC, a Nevada limited liability company; THE TOY CHEST, LLC a Nevada limited liability company,

Plaintiffs,

v.

MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations,

Defendants.

Case No: 2:20-cv-00994

**DECLARATION OF LORI DIAZ IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOSEPH FRANK ABEL**

I, Lori Diaz declare:

1. I am a manager of Plaintiff The Toy Chest, LLC ("The Toy Chest") and am authorized to make this Declaration on The Toy Chest's behalf.

2. During the spring of 2018, Defendants, including Joseph Frank Abel ("Abel") engaged in solicitation of The Toy Chest to participate in a Bitcoin ("BTC") by offering for sale shares of BTC mining business issued by Defendants, including Abel.

3. To The Toy Chest's knowledge, Defendants, including Abel, engaged in these private and public solicitations through a website www.bitclub.com ("Bitclub") wherein the Defendants, including Abel, created and maintained a website for the Bitclub Offering, and through independent business operators within the Bitclub scheme through the means or instrumentalities of interstate commerce, including email and the internet.

4. In an effort to solicit The Toy Chest and to induce it into investing in the Bitclub Offering, Defendants, including Abel, made the following untrue statements of material fact to The Toy Chest (the "Bitclub Misrepresentation"):

a. misleading figures regarding the amount of crypto currency mining operations in place;

b. misleading figures regarding the amount of crypto currency being mined at Bitclub controlled mining operations;

c. misleading figures and documentation regarding the amount of future profit to be derived from the Bitcoin mining operations;

d. fraudulent statements from Defendants and Defendants' independent business operators within the multi-level marketing scheme regarding commissions to be paid for joining the Bitclub Scheme and recruiting others to join the Bitclub Scheme and invest in the Bitclub Offering;

e. misleading statements regarding future operations and investments by the Bitclub management;

f. untrue and misleading statements regarding access to funds invested in the Bitclub Offering through an internet based website.

5. In reasonable and justified reliance upon the Bitclub Misrepresentations and Bitclub Omissions made by Defendants, including Abel, The Toy Chest invested $250,000.00 USD with Defendants for purchase of the Bitclub Offering.

6. Subsequent to their solicitation and sale of the Biclub Offering to The Toy Chest, Defendants, including Abel, materially breached and defaulted on their obligations to The Toy Chest under the parties' contracts by, among other actions:

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

a. failing and refusing to pay dividends, bonuses and other compensation due to the The Toy Chest as required by the investor contracts;

b. repeatedly misrepresenting and concealing the true nature and status of the The Toy Chest's investments in Bitclub as well as the finances, operations and legal status of Bitclub; and

7. As a direct and proximate consequence of the Defendants' unlawful conduct as described herein, the The Toy Chest lost the $250,000.00 USD investment.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 20th day of December, 2022.

The Toy Chest, LLC

By: Lori Diaz, its manager

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
C. ROBERT PETERSON, ESQ.
Nevada Bar No. 11680
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: bob@kerrsimpsonlaw.wom
*Attorneys for Plaintiff*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MINA DE ORO, LLC, a Nevada limited liability company; MINA DE ORO, LLC a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations,<br><br>Defendants. | Case No: 2:20-cv-00994<br><br>**DECLARATION OF LOUIS DIAZ IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOSEPH FRANK ABEL** |

I, Louis Diaz declare:

1. I am a manager of Plaintiff Mina De Oro, LLC ("Mina De Oro") and am authorized to make this Declaration on Mina De Oro's behalf.

2. During the spring of 2018, Defendants, including Joseph Frank Abel ("Abel") engaged in solicitation of Mina De Oro to participate in a Bitcoin ("BTC") by offering for sale shares of BTC mining business issued by Defendants, including Abel.

3. To Mina De Oro's knowledge, Defendants, including Abel, engaged in these private and public solicitations through a website www.bitclub.com ("Bitclub") wherein the Defendants, including Abel, created and maintained a website for the Bitclub Offering, and through independent business operators within the Bitclub scheme through the means or instrumentalities of interstate commerce, including email and the internet.

4. In an effort to solicit Mina De Oro and to induce it into investing in the Bitclub Offering, Defendants, including Abel, made the following untrue statements of material fact to Mina De Oro (the "Bitclub Misrepresentation"):

a. misleading figures regarding the amount of crypto currency mining operations in place;

b. misleading figures regarding the amount of crypto currency being mined at Bitclub controlled mining operations;

c. misleading figures and documentation regarding the amount of future profit to be derived from the Bitcoin mining operations;

d. fraudulent statements from Defendants and Defendants' independent business operators within the multi-level marketing scheme regarding commissions to be paid for joining the Bitclub Scheme and recruiting others to join the Bitclub Scheme and invest in the Bitclub Offering;

e. misleading statements regarding future operations and investments by the Bitclub management;

f. untrue and misleading statements regarding access to funds invested in the Bitclub Offering through an internet based website.

5. In reasonable and justified reliance upon the Bitclub Misrepresentations and Bitclub Omissions made by Defendants, including Abel, Mina De Oro invested $250,000.00 USD with Defendants for purchase of the Bitclub Offering.

6. Subsequent to their solicitation and sale of the Biclub Offering to Mina De Oro, Defendants, including Abel, materially breached and defaulted on their obligations to Mina De Oro under the parties' contracts by, among other actions:

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

a. failing and refusing to pay dividends, bonuses and other compensation due to the Mina De Oro as required by the investor contracts;

b. repeatedly misrepresenting and concealing the true nature and status of the Mina De Oro's investments in Bitclub as well as the finances, operations and legal status of Bitclub; and

7. As a direct and proximate consequence of the Defendants' unlawful conduct as described herein, the Mina De Oro lost the $250,000.00 USD investment.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 20th day of December, 2022.

Mina De Oro, LLC

By: Louis Diaz, its manager

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

# UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Mina De Oro, LLC, et al.,

Plaintiff,

v.

Goettsche, et al.,

Defendant.

DEFAULT JUDGMENT IN A CIVIL CASE

Case Number: 2:20-cv-00994-CDS-VCF

___ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

___ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

X **Decision by Court.** This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

that Default Judgment is entered in favor of Plaintiff Mina De Oro, LLC and against Joseph Frank Abel in the amount of $250,000 and that Mina De Oro, LLC is entitled to recover the same against him, with interest accruing at the legal rate from the date of the filing of the Complaint, Dkt. 1, June 3, 2020, until paid in full. AND FURTHER GRANTS JUDGMENT in favor of Plaintiff The Toy Chest, LLC and against Joseph Frank Abel in the amount of $250,000 and that The Toy Chest, LLC is entitled to recover the same against him, with interest accruing at the legal rate from the date of the filing of the Complaint, Dkt. 1, June 3, 2020, until paid in full.

1/26/2023
Date

DEBRA K. KEMPI
Clerk

/s/ E. Smith
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Mina De Oro, LLC, and The Toy Chest, LLC,<br>Plaintiffs<br>v.<br>Jobediah Sinclair Weeks, et al.,<br>Defendants | Case No. 2:20-cv-00994-CDS-VCF<br><br>**Order Dismissing Two Defendants for Failure to Serve** |

In October 2022, I ordered the plaintiffs to file proof of service as to defendants Silviu Catalin Balaci and Bitclub. ECF No. 40. I explained that my "order constitute[d] notice that this action may be dismissed without prejudice as to those two parties unless the plaintiffs file proof of service with the clerk by **November 18, 2022**." *Id.* at 2. Since then, the plaintiffs have not provided proof of service or demonstrated good cause as to why Balaci and Bitclub could not be served within the timeframe specified in Federal Rule of Civil Procedure 4(m).

Rule 4(m) requires that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The plaintiffs filed their initial complaint on June 3, 2020. ECF No. 1. And they filed an amended complaint on April 18, 2022. ECF No. 33. The 90-day deadline in Rule 4(m) has long passed, and despite being on notice that I would dismiss these two defendants without proof of service, the plaintiffs have not taken action.

IT IS THEREFORE ORDERED that defendants Balaci and Bitclub are dismissed from this action without prejudice.

DATED: March 8, 2023

_______________________________
Cristina D. Silva
United States District Judge

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
C. ROBERT PETERSON, ESQ.
Nevada Bar No. 11680
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: bob@kerrsimpsonlaw.wom
*Attorneys for Plaintiff*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MINA DE ORO, LLC, a Nevada limited liability company; THE TOY CHEST, LLC a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations,<br><br>Defendants. | Case No: 2:20-cv-00994<br><br>**DECLARATION OF LORI DIAZ IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOBEDIAH SINCLAIR WEEKS** |

I, Lori Diaz declare:

1. I am a manager of Plaintiff The Toy Chest, LLC ("The Toy Chest") and am authorized to make this Declaration on The Toy Chest's behalf.

2. During the spring of 2018, Defendants, including Jobediah Sinclair Weeks ("Weeks") engaged in solicitation of The Toy Chest to participate in a Bitcoin ("BTC") by offering for sale shares of BTC mining business issued by Defendants, including Weeks.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

3. To The Toy Chest's knowledge, Defendants, including Weeks, engaged in these private and public solicitations through a website www.bitclub.com ("Bitclub") wherein the Defendants, including Weeks, created and maintained a website for the Bitclub Offering, and through independent business operators within the Bitclub scheme through the means or instrumentalities of interstate commerce, including email and the internet.

4. In an effort to solicit The Toy Chest and to induce it into investing in the Bitclub Offering, Defendants, including Weeks, made the following untrue statements of material fact to The Toy Chest (the "Bitclub Misrepresentation"):

a. misleading figures regarding the amount of crypto currency mining operations in place;

b. misleading figures regarding the amount of crypto currency being mined at Bitclub controlled mining operations;

c. misleading figures and documentation regarding the amount of future profit to be derived from the Bitcoin mining operations;

d. fraudulent statements from Defendants and Defendants' independent business operators within the multi-level marketing scheme regarding commissions to be paid for joining the Bitclub Scheme and recruiting others to join the Bitclub Scheme and invest in the Bitclub Offering;

e. misleading statements regarding future operations and investments by the Bitclub management;

f. untrue and misleading statements regarding access to funds invested in the Bitclub Offering through an internet based website.

5. In reasonable and justified reliance upon the Bitclub Misrepresentations and Bitclub Omissions made by Defendants, including Weeks, The Toy Chest invested $250,000.00 USD with Defendants for purchase of the Bitclub Offering.

6. Subsequent to their solicitation and sale of the Biclub Offering to The Toy Chest, Defendants, including Weeks, materially breached and defaulted on their obligations to The Toy Chest under the parties' contracts by, among other actions:

a. failing and refusing to pay dividends, bonuses and other compensation due to the The Toy Chest as required by the investor contracts;

b. repeatedly misrepresenting and concealing the true nature and status of the The Toy Chest's investments in Bitclub as well as the finances, operations and legal status of Bitclub; and

7. As a direct and proximate consequence of the Defendants' unlawful conduct as described herein, the The Toy Chest lost the $250,000.00 USD investment.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 10th day of March, 2023.

The Toy Chest, LLC

By: Lori Diaz, its manager

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

# EXHIBIT 2

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
C. ROBERT PETERSON, ESQ.
Nevada Bar No. 11680
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
Email: sterling@kerrsimpsonlaw.com
Email: bob@kerrsimpsonlaw.wom
*Attorneys for Plaintiff*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MINA DE ORO, LLC, a Nevada limited liability company; THE TOY CHEST, LLC a Nevada limited liability company,

Plaintiffs,

v.

MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations,

Defendants.

Case No: 2:20-cv-00994

**DECLARATION OF LOUIS DIAZ IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOBEDIAH SINCLAIR WEEKS**

I, Louis Diaz declare:

1. I am a manager of Plaintiff Mina De Oro, LLC ("Mina De Oro") and am authorized to make this Declaration on Mina De Oro's behalf.

2. During the spring of 2018, Defendants, including Jobediah Sinclair Weeks ("Weeks") engaged in solicitation of Mina De Oro to participate in a Bitcoin ("BTC") by offering for sale shares of BTC mining business issued by Defendants, including Weeks.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

3. To Mina De Oro's knowledge, Defendants, including Weeks engaged in these private and public solicitations through a website www.bitclub.com ("Bitclub") wherein the Defendants, including Weeks, created and maintained a website for the Bitclub Offering, and through independent business operators within the Bitclub scheme through the means or instrumentalities of interstate commerce, including email and the internet.

4. In an effort to solicit Mina De Oro and to induce it into investing in the Bitclub Offering, Defendants, including Weeks, made the following untrue statements of material fact to Mina De Oro (the "Bitclub Misrepresentation"):

a. misleading figures regarding the amount of crypto currency mining operations in place;

b. misleading figures regarding the amount of crypto currency being mined at Bitclub controlled mining operations;

c. misleading figures and documentation regarding the amount of future profit to be derived from the Bitcoin mining operations;

d. fraudulent statements from Defendants and Defendants' independent business operators within the multi-level marketing scheme regarding commissions to be paid for joining the Bitclub Scheme and recruiting others to join the Bitclub Scheme and invest in the Bitclub Offering;

e. misleading statements regarding future operations and investments by the Bitclub management;

f. untrue and misleading statements regarding access to funds invested in the Bitclub Offering through an internet based website.

5. In reasonable and justified reliance upon the Bitclub Misrepresentations and Bitclub Omissions made by Defendants, including Weeks, Mina De Oro invested $250,000.00 USD with Defendants for purchase of the Bitclub Offering.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

6. Subsequent to their solicitation and sale of the Biclub Offering to Mina De Oro, Defendants, including Weeks, materially breached and defaulted on their obligations to Mina De Oro under the parties' contracts by, among other actions:

a. failing and refusing to pay dividends, bonuses and other compensation due to the Mina De Oro as required by the investor contracts;

b. repeatedly misrepresenting and concealing the true nature and status of the Mina De Oro's investments in Bitclub as well as the finances, operations and legal status of Bitclub; and

7. As a direct and proximate consequence of the Defendants' unlawful conduct as described herein, the Mina De Oro lost the $250,000.00 USD investment.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 10th day of March, 2023.

Mina De Oro, LLC

By: Louis Diaz, its manager

# EXHIBIT 3

P. STERLING KERR, ESQ.
Nevada Bar No. 3978
C. ROBERT PETERSON, ESQ.
Nevada Bar No. 11680
KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200
Henderson, Nevada 89052
Telephone No. (702) 451-2055
Facsimile No. (702) 451-2077
sterling@kerrsimpsonlaw.com
bob@kerrsimpsonlaw.wom
*Attorneys for Plaintiff*

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MINA DE ORO, LLC, a Nevada limited liability company; THE TOY CHEST, LLC a Nevada limited liability company,

Plaintiffs,

v.

MATTHEW BRENT GOETTSCHE, an individual, JOBEDIAH SINCLAIR WEEKS, an individual, JOSEPH FRANK ABEL, an individual, SILVIU CATALIN BALACI, an individual, BITCLUB, an unknown entity, and DOE and ROE Corporations,

Defendants.

Case No: 2:20-cv-00994

**DECLARATION OF C. ROBERT PETERSON, ESQ. IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOBEDIAH SINCLAIR WEEKS**

I, C. Robert Peterson, Esq. declare:

1. I am the counsel for Plaintiffs in this matter and am competent to testify as to the matter set forth herein.

2. I am familiar with the facts of this case and after careful investigation in the cause and has been informed and believes that Jobediah Sinclair Weeks is not in the military service of the United States, nor an infant, nor an incompetent person.

/ / /

FURTHER DECLARANT SAYETH NAUGHT

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

DATED this 10th day of March, 2023.

C. Robert Peterson, Esq.

KERR SIMPSON ATTORNEYS AT LAW
2900 W. Horizon Ridge Parkway, Suite 200, Henderson, Nevada 89052
Telephone: (702) 451-2055 Facsimile: (702) 451-2077

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Mina De Oro, LLC, and The Toy Chest, LLC,

Plaintiffs

v.

Jobediah Sinclair Weeks,

Defendant

Case No. 2:20-cv-00994-CDS-VCF

**Order Granting Motion for Default Judgment and Closing Case**

[ECF No. 56]

Plaintiffs Mina De Oro, LLC and The Toy Chest, LLC move for default judgment against the sole remaining defendant, Jobediah Sinclair Weeks, who has not appeared or participated in this litigation. ECF No. 56. The plaintiffs have already obtained entry of default as to Weeks. ECF No. 53. I have reviewed the plaintiffs' motion and their arguments about why default judgment is appropriate under the factors identified in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). ECF No. 56. Despite the strong policy favoring decisions on the merits, I find that the *Eitel* factors ultimately weigh in favor of default judgment here.

IT IS THEREFORE ORDERED that under Federal Rule of Civil Procedure 55(b)(2), the plaintiffs' motion for default judgment **[ECF No. 56] is GRANTED**. Because no defendants remain in this case, with good cause appearing and no reason to delay, IT IS FURTHER ORDERED that the Clerk of Court is directed to **ENTER FINAL JUDGMENT against Weeks in the amount of $250,000 in favor of each plaintiff** and CLOSE THIS CASE.

DATED: April 10, 2023

Cristina D. Silva
United States District Judge

AO450 (NVD Rev. 2/18) Judgment in a Civil Case

# UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Mina De Oro, LLC,

Plaintiff,

v.

Matthew Brent Goettsche, et al.,

Defendants.

JUDGMENT IN A CIVIL CASE

Case Number: 2:20-cv-00994-CDS-VCF

__ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

__ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

X **Decision by Court.** This action came for consideration before the Court. The issues have been considered and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

that the Clerk of Court is directed to ENTER FINAL JUDGMENT against Weeks in the amount of $250,000 in favor of each plaintiff and CLOSE THIS CASE.

04/10/2023
Date

DEBRA K. KEMPI
Clerk

/s/ L. Ortiz
Deputy Clerk

About Opportunity Mining Trading Contact us EN

Welcome: crypto8trader
Sign out
Next Payout: 22:02:00
Your Rank:
Founder
HOME
MY ACCOUNT
MY WALLETS
MY TEAM
RESOURCES
PRODUCTS
ENROLL MEMBER

**ATTENTION:** Your account is not verified. Please provide full KYC documentation by clicking **here**. You have until Dec 31st to submit your information or your account will be suspended.

Back Online! September 13th News Update - Click Here

**BITCLUB NETWORK, INC.**

**MEMBERSHIP AGREEMENT**

**Membership with BitClub Network, Inc. ("BitClub Network"), and gaining access to its opportunities and benefits is conditioned upon (1) satisfying eligibility requirements including age and residence, (2) acknowledging that the prospective member agrees to the terms of the BitClub Network agreements, as set forth below, and (3) payment of a membership fee.**

**Membership Agreement Terms**

**Prospective BitClub Network Member:**

1. **By executing this Membership Agreement below, you confirm:**
   a. **that you are at least 18 years of age; and**
   b. **that you are not a citizen or resident of the following countries:**
      1. **United States of America, or its territories**
      2. **Philippines**
2. **By executing this Membership Agreement below, you agree that as a Member of BitClub Network, you are bound by the following agreements:**
   a. **This Membership Agreement;**
   b. **BitClub Network, Inc.'s Policies and Procedures and**
   c. **Any agreement required of Members to participate in BitClub Network's Mining Pool opportunities.**
3. **Payment of a membership fee is required before you may become a BitClub Network Member, and that the membership fee is paid by transferring payment in Bitcoin Cash (BCH) in an amount equivalent to USD $99.**

☐ **I agree to the Policies and Procedures**
☐ **I agree to the Pooled Unit Mining Agreement**

I Agree

Copyright ©2019 BitClub Network. All rights reserved.

Terms of Service Privacy Policy





About Opportunity Mining Trading Contact us EN

Welcome crypto8trader
Sign out
Next Payout: 22:01:34
Your Rank
Founder
HOME
MY ACCOUNT
MY WALLETS
MY TEAM
RESOURCES
PRODUCTS
ENROLL MEMBER

**ATTENTION:** Your account is not verified. Please provide full KYC documentation by clicking **here**. You have until Dec 31st to submit your information or your account will be suspended.

Back Online! September 13th News Update - Click Here

**POLICIES AND PROCEDURES**

**SECTION 1 – THE COMPANY**

BitClub Network, Inc. (the "Company") is an entity incorporated in Nevis as an International Business Corporation, offering club membership to prospective members. Company membership benefits include opportunities to contribute to the acquisition of digital asset mining equipment and to participate in the benefits generated from the utilization of such digital asset mining equipment, which benefits are in the form of mined digital assets that are distributed to participating Company members. Additionally, Members can participate in the Company's compensation plan.

**SECTION 2 – INTRODUCTION Section 2.1 – Combining Membership Agreement with Policies and Procedures and Compensation Plan**

The Membership Agreement includes and incorporates these Policies and Procedures, and collectively they form the Company Membership Agreement (hereafter, collectively the "Agreements") which are further defined by reference to the Company Compensation Plan. **It is the responsibility of each Member to read, understand, adhere to and ensure that he or she is aware of and operating under the most current version of these Agreements.**

**Section 2.2 – Changes to Agreements**

The Company reserves the right, in its discretion, to amend the Agreements, and the Member agrees to abide by such amended Agreements. Amendments take affect when published to Members by one or more of the following methods: (1) posting on the Company's official website; (2) electronic mail; and/or (3) posting in Members back-offices.

**Section 2.3 – Severability and Invalidity**

If any provision of the Agreements are found to be invalid, or unenforceable, such provision shall not render the agreement invalid but shall be severable from the agreement and the remaining provisions shall remain in full force and effect.

**Section 2.4 – No Waiver**

The Company shall not be deemed to have waived or relinquished its right to insist on compliance by the Member with the Agreements. And, no failure of the Company to exercise any right or power or to insist upon strict compliance by a Member with the Agreements shall constitute a waiver of the Company's right to demand exact compliance, nor shall a waiver be created by any custom or practice of the parties at variance with the terms of the Agreements.

## SECTION 3 – BECOMING A MEMBER

### Section 3.1 – Requirements to Become a Member

Company Membership requires the following:

a. Be at least 18 years of age;
b. Reside in a country that is not prohibited by the Company (Prohibited Countries List);
c. and submit to the Company the information requested in its Membership Application;
d. Agree to the terms of the Company Agreements (Membership Agreement, and Policies and Procedures)(as further defined by reference to the Company Compensation Plan); and
e. Provide payment to the Company in the form and amount required as part of the online application.

The Company reserves the right to accept or reject any prospective member and/or application for membership for any reason or for no reason.

### Section 3.2 – No Purchase Required

There is no obligation to purchase any product or service from the Company to obtain Membership.

### Section 3.3 – Member Benefits

Membership in the Company allows the following Member rights:

a. Right to promote the Company's benefits and opportunities;
b. Right to participate in the Company Compensation Plan;
c. Right to sponsor prospective Company members;
d. Right to receive Company literature and Company communications; and
e. Right to participate in Company sponsored functions.

## SECTION 4 – OPERATING AS A MEMBER

### Section 4.1 – Advertising

#### Section 4.1.1 – General

Members shall safeguard and promote the good reputation of the Company and its benefits and opportunities. Member's marketing and promotion of the Company, the opportunities and benefits from Company Membership, including the Company Compensation Plan, must avoid all illegal, discourteous, deceptive, misleading, unethical or immoral conduct or practices. The Company reserves the right to request and require any Member to either modify or discontinue use of marketing or promotional materials if the Company, in its sole discretion, deems such materials to be in violation of the Agreements.

#### Section 4.1.2 – Trademarks and Copyrights

The name of the Company and other names as may be adopted by the Company are proprietary trade names, trademarks and service marks of the Company (collectively "marks"). The Company reserves the right to require a Member to discontinue use of any of the Company's trade names, trademarks, designs or symbols or any derivatives of such marks.

Members agree to make clear the distinction between the Member as independent from the Company. The Company reserves the right to require a Member to discontinue using the Company name in any team name, tagline, external website name, personal website address or extension, e-mail address, personal name, or nickname. For example, Members may not secure the domain name www.buybitclubnetwork.com nor may they create an email address such as info@bitclubnetwork.com.

#### Section 4.1.3 – Media and Media Inquiries

Members agree to not respond to media inquiries regarding the Company, including its benefits and opportunities, and/or the Member's independent Company business activities.

#### Section 4.1.4 – Unsolicited Email

The Company does not authorize Members to send unsolicited commercial emails.

### Section 4.2 – Online Conduct

#### Section 4.2.1 – Member Web Sites

Members may be provided with a replicated template website by the Company, from which the Member can enroll new Members, and manage their Company business activities through their back-office.

Member may also have their own websites and agree that their website and its content will comply at all times with the terms of these Policies and Procedures.

It is the Member's obligation to ensure their online marketing and promotion activities are truthful, are not deceptive and do not mislead prospective Members. Websites and web promotion activities and tactics that mislead or are deceptive, regardless of intent, will result in disciplinary action. Misleading tactics include, but are not limited to, spam linking, unethical search engine optimization ("SEO"), and misleading click-through ads. The Company, in its sole discretion, will determine whether activities are truthful, misleading, deceptive, and/or violate these Policies and Procedures.

**SECTION 4.2.2 – Domain Names, Email Addresses and Online Aliases**
Members agree not to register Company trademarks, trade names or any derivatives for any Internet domain name, email address or online alias. Additionally, Members agree not to use or register domain names, email addresses, and/or online aliases that could cause confusion, or be misleading or deceptive, in that they cause individuals to believe or assume the communication is from the Company. The Company reserves the right to determine in its sole discretion if a name, address, or alias is misleading or deceptive, and to require the Member to change or discontinue using such name, address, or alias.

**SECTION 4.2.3 – Digital Media Submission (YouTube, Facebook, Instagram, etc.)**
Members may upload, submit or publish video, audio or photo content relating to their Membership in the Company that they develop and create so long as it aligns with Company values, contributes to Company community greater good and is in compliance with the Company's Policies and Procedures. Submissions must identify the Member as an Independent Company Member, and the content and description tag must comply with all copyright/legal requirements and state that the Member posting such material, not the Company, is solely responsible for the content. Members may not upload, submit or publish any content (video, audio, presentations or any computer files) received from the Company or captured at official Company events or in buildings owned or operated by the Company without prior permission.

**SECTION 4.2.4 – Social Media**
Social Media may be used by a Member to share information about the Company's benefits and opportunities and for prospecting and sponsoring prospective new members, so long as the Member complies with these Policies and Procedures.

**SECTION 4.2.5 – Members are Responsible for Postings**
Members are responsible for their postings and their other online activity that relates to the Company. Members are also responsible for postings which occur on any blog or Social Media site that the Member owns, operates or controls.

**SECTION 4.2.6 – Deceptive Postings Prohibited**
Postings that are false, misleading, deceptive, or that promote illegal conduct are prohibited; and, the Company, reserves the right, in its sole discretion, to determine whether postings are false, misleading, deceptive, or promote illegal conduct.

**SECTION 4.2.7 – Use of Third Party Intellectual Property**
If a Member uses the trademarks, trade names, service marks, copyrights or intellectual property of any third party in any posting, it is Member's responsibility to ensure that he or she has received the proper license to use such intellectual property and has paid the appropriate license fee. A Member must adhere to the restrictions and conditions that the intellectual property owner places on the use of its intellectual property.

**SECTION 4.2.7 – Respecting Privacy**
A Member must respect the privacy of others by refraining from gossip and not advancing rumors about any individual, company or competitive products or services. Members will not list names individuals or entities without their permission or consent.

**SECTION 4.2.8 – Professionalism**
Members' postings must be truthful and accurate and will not contain offensive language.

**SECTION 4.2.9 – Obscene Postings Prohibited**
Members will not make any postings or link to any postings or other material that are:

1. Sexually explicit, obscene, or pornographic;
2. Offensive, profane, hateful, threatening, harmful, defamatory, libelous, harassing, or discriminatory (whether based on race, ethnicity, creed, religion, gender, sexual orientation, physical disability, or otherwise);
3. Graphically violent, including any violent video game images;
4. Solicitous of any unlawful behavior;
5. Engaging in personal attacks on any individual, group, or entity; and/or
6. Violating intellectual property rights of the Company or any third party.

The Company, reserves the right, in its sole discretion, to determine whether postings or links violate these Policies and Procedures.

SECTION 4.2.10 – Refrain from Responding to Negative Posts

Members will refrain from responding to negative posts against a Member and/or against the Company.

SECTION 4.2.11 – Social Media Sites with Website-Like Features

The Company reserves the sole and exclusive right to classify certain social media sites as websites and require that Members using such sites adhere to the Company's policies relating to using websites.

SECTION 4.2.12 – Cancellation of Membership

If a Member's membership is canceled for any reason, the Member must discontinue using the Company's name, and all of Company trademarks, trade names, service marks, and other intellectual property, and all derivatives of such marks and intellectual property.

SECTION 4.3 – Waiver of Claims

The Company reserves the sole and exclusive right to determine the final disposition of a downline organization. MEMBERS WAIVE ANY AND ALL CLAIMS AGAINST THE COMPANY, ITS OFFICERS, DIRECTORS, CEO, OWNERS, EMPLOYEES, ADVISORS AND AGENTS THAT RELATE TO OR ARISE FROM THE COMPANY'S DECISION REGARDING THE DISPOSITION OF ANY DOWNLINE ORGANIZATION THAT DEVELOPS BELOW A CANCELED MEMBERSHIP.

SECTION 4.4 – Unauthorized Claims and Actions

SECTION 4.4.1 – No Member Indemnification

A Member is fully responsible for all of his or her verbal and written statements made regarding Company products, services, and the Compensation Plan. Members agree to indemnify the Company, and its directors, officers, employees, and agents and hold them harmless from all liability including judgments, civil penalties, refunds, attorney fees, court costs, or lost business incurred by the Company as a result of the Member's unauthorized representations or actions. This provision shall survive the termination of the Member Agreement.

SECTION 4.4.2 – Product Claims

Members shall not make claims regarding any opportunity or benefit offered by the Company except conveying claims made by the Company or claims supported by reference to a public blockchain, and such claims shall comply with the laws and regulations of the applicable jurisdiction.

SECTION 4.4.3 – Opportunities and Benefits Claims

A Member must make it clear to prospective members that financial success derived from the opportunities and benefits of Company Membership requires commitment, effort, and skill. A Member must never make representations such as:

1. It's a turnkey system;
2. The system will do the work for a Member;
3. Just get in and your downline will build through spill over;
4. Just join and I'll build your downline for you; or
5. The company does all the work for its Members.

The above are just examples of improper representations about the Company, its opportunity and its benefits, including under the Compensation Plan.

SECTION 4.4.4 – Income Claims

A Member, when presenting or discussing the Company's opportunities and/or benefits, including the Compensation Plan, to a prospective Member, must not make income projections, or income claims, but may disclose benefits received by the Member from Membership in the Company but only to the extent the Member also provides documents or verifiable information to the prospective Member supporting the disclosure or representation.

**SECTION 4.5 – Conflict of Interests**
**SECTION 4.5.1 – Confidential Information**

"Confidential Information" includes, but is not limited to the identities of Company Members, contact information of Company Members, Members' personal and group sales volumes, and Member rank and/or achievement levels. Confidential Information is, or may be available, to Members in their respective back-offices. Member access to such Confidential Information is password protected and is confidential and constitutes proprietary information and trade secrets belonging to the Company. Such Confidential Information is provided or made available to Members in strictest confidence and is made available to Members for the sole purpose of assisting Members. The Member and the Company agree that, but for this agreement of confidentiality and nondisclosure, the Company would not provide Confidential Information to the Member.

To protect the Confidential Information, Members shall not, on his or her own behalf, or on behalf of any other person, partnership, association, corporation or other entity:

1. Directly or indirectly disclose any Confidential Information to any third party;
2. Directly or indirectly disclose the password or other access code to his or her back-office;
3. Use any Confidential Information to compete with the Company or for any purpose other than promoting the Company's opportunities or obtaining the Company's benefits;
4. Recruit or solicit any Member, or in any manner attempt to influence or induce any Member, to alter their relationship with the Company; or
5. Use or disclose to any person, partnership, association, corporation, or other entity any Confidential Information.

The obligation not to disclose Confidential Information shall survive cancellation or termination of the Agreements and shall remain effective and binding irrespective of whether one of the Agreements has been terminated.

**SECTION 4.6 – Targeting Other Direct Sellers**

The Company does not condone Members solicitation or enticement of members of the sales force of another company to violate the terms of their contract with such other company. Members bear the risk of such conduct and the Company will not pay any of the Member's defense costs or legal fees, nor will the Company indemnify the Member for any judgment, award, or settlement.

**SECTION 4.7 – Errors or Questions**

A Member must notify the Company of any errors regarding commissions, bonuses, genealogy lists, or charges within 60 days of the date of the purported error. The Company will not be responsible for any errors, omissions or problems not reported to the Company within 60 days of the error.

**SECTION 4.8 – Governmental Approval or Endorsement**

Members shall not represent or imply that the Company or its Compensation Plan have been "approved," "endorsed" or otherwise sanctioned by any government agency.

**SECTION 4.9 – Income Taxes**

Each Member is responsible for paying the applicable taxes, if any, on any value received or generated as an Independent Member. Unfortunately, the Company cannot provide a Member with any personal tax advice, but a Member should consult a tax accountant, tax attorney or another tax professional.

**SECTION 4.10 – Independent Contractor Status**

Members are independent contractors. No agreement between the Company and its Members creates an employer/employee relationship, agency, partnership, or joint venture. Members shall not be treated as an employee for his or her services or for tax purposes. The Member has no authority (expressed or implied), to bind the Company to any obligation. Each Member shall establish his or her own goals, hours, and methods of sale, so long as he or she complies with the Member Agreement, these Policies and Procedures, and applicable laws.

**SECTION 4.11 – International Marketing**

In countries where the Company has prohibited promotional or sales activities (Prohibited Countries List), Members agree that they will not: (a) conduct sales, enrollment or training meetings; (b) enroll or attempt to enroll prospective Members; or (c) conduct any other activity for the purpose of promoting Company opportunities or benefits, or establishing a marketing organization. Failure to comply with these Policies and Procedures may result in termination of the Member's membership in the Company.

**SECTION 4.12 – Adherence to Law and Ordinances**

Many cities, Counties, Provinces, and municipalities have laws and ordinances regulating certain businesses. Members shall comply with all laws and regulations in all Countries where the Member conducts business related to the Company.

**SECTION 4.13 – Actions of Household Members**

If any member of a Member's immediate household engages in any activity which, if performed by the Member, would violate any provision of the Agreement, such activity will be deemed a violation by the Member and the Company may take disciplinary action pursuant to the Statement of Policies against the Member.

**SECTION 4.14 – Actions of Entity Representative**

If any individual associated in any way with a Member that is a corporation, partnership, LLC, trust or another entity violates the Agreement, such action(s) will be deemed a violation by the Member.

**SECTION 4.15 – Sponsoring Online**

Members who sponsor or assist Prospective Members in completing the Membership Application are prohibited from acknowledging or confirming, on behalf of the Prospective Member, any agreement to the Membership Agreement, these Policies and Procedures, and the Compensation Plan. The Prospective Member is required to agree and confirm their agreement to these Agreements to obtain Membership in the Company.

**SECTION 5 – RESPONSIBILITIES OF MEMBERS**

**SECTION 5.1 – Non-Disparagement**

Members must not disparage, demean, or make negative remarks about the Company, other Company Members, the Company products, the Compensation Plan, or the Company directors, officers, or employees.

**SECTION 6 – BONUSES AND COMMISSIONS**

**SECTION 6.1 – Bonus and Commission Qualifications and Accrual**

So long as a Member complies with the terms of the Agreements, the Company shall pay commissions to such Member in accordance with the Compensation Plan.

**SECTION 7 – REFUNDS AND BUYOUTS**

**SECTION 7.1 – Membership Application Fee Refund**

Refund requests must be made within 72 hours of payment of the membership application fee, or prior to receiving any of the benefits or membership, including participating in a mining pool. Untimely refund requests will be rejected. Timely requests for refunding the membership application fee will be refunded to the new Member.

**SECTION 7.2 – Buyout Requests**

Buyout requests must be made within the first year of membership in the Company. A Member's request for a "Buyout" is not a refund but is a request to take possession of a portion of the digital asset mining equipment intended for use in acquiring or creating digital assets that would be distributed to participating Members. If a Member requests a "Buyout," the Company may consider this request and may provide the Member with a calculation of value of the Member's interest in the equipment, minus any costs for shipping and handling of the equipment to the Member. If a Member elects a buyout, the Member forfeits all future mining pool earnings or benefits, and forfeits any commissions under the Compensation Plan.

**SECTION 8 – DISPUTE RESOLUTION AND DISCIPLINARY PROCEEDINGS**

**SECTION 8.1 – Disciplinary Sanctions**

Violation of the Agreement, these Policies and Procedures, violation of any common law duty, including but not limited to any applicable duty of loyalty, or any illegal, fraudulent, deceptive or unethical conduct, or any act or omission by a Member that, in the sole discretion of the Company may damage its reputation or goodwill (such damaging act or omission need not be related to the Member's business with the Company), may result, at the Company's discretion, in one or more of the following corrective measures:

1. Issuance of a written warning or admonition;
2. Requiring the Member to take immediate corrective measures;
3. Imposition of a fine, which may be withheld from bonus and commission checks;
4. Loss of rights to one or more bonus and commission checks;
5. The Company may withhold from a Member all or part of the Member's bonuses and commissions during the period that the Company is investigating any conduct allegedly in violation of the Agreement. If a Member's business is canceled, the Member will not be entitled to recover any commissions withheld during the investigation period;
6. Suspension of the individual's Member Agreement for one or more pay periods;
7. Permanent or temporary loss of, or reduction in, the current and/or lifetime rank of a Member (which may subsequently be re-earned by the Member);
8. Transfer or removal of some or all of a Member's downline;
9. Involuntary termination of the offender's Member Agreement;
10. Suspension and/or termination of the offending Member's Company website or website access;
11. Any other measure expressly allowed within any provision of the Agreement or which the Company deems practicable to implement and appropriate to equitably resolve injuries caused partially or exclusively by the Member's policy violation or contractual breach;

In situations deemed appropriate by the Company, the Company may institute legal proceedings for monetary and/or equitable relief.

**SECTION 8.2 – Mediation**

**Prior to instituting an arbitration, the parties shall meet in good faith and attempt to resolve any dispute arising from or relating to the Agreement through non-binding mediation.**

**SECTION 8.3 – Arbitration**

**If mediation is unsuccessful, any controversy or claim arising out of or relating to the Agreement, or the breach thereof, not including unilateral discretionary policy enforcement by the Company, shall be settled by confidential arbitration. The Parties waive all rights to trial by jury or to any court. Arbitration shall be conducted in either Douglas, Isle of Man, or, if the Isle of Man is determined to be inconvenient, then Manila, Philippines.**

**SECTION 8.4 – Temporary Judicial Relief**

Notwithstanding the foregoing, nothing in these Policies and Procedures shall prevent the Company from applying to and obtaining from any court having jurisdiction, a writ of attachment, a temporary injunction, preliminary injunction, permanent injunction or other relief available but only to safeguard and protect its intellectual property rights, its trade secrets, and/or to enforce its rights under the non-solicitation provision of the Agreement; all other temporary or preliminary relief is waived.

**SECTION 8.5 – Governing Law, Jurisdiction and Venue**

Jurisdiction and venue of any matter not subject to arbitration shall reside exclusively in the City of Douglas, Isle of Man. The law of Isle of Man shall govern all other matters relating to or arising from the Agreement.

SECTION 9 – PAYMENTS

SECTION 9.1- Payment Using Cryptocurrency

The required method of payment for all products and services is cryptocurrency through an applicable wallet.

**SECTION 10 – Cancellation**

**SECTION 10.1 – Voluntary Cancellation**

A Member may cancel his or her membership at any time by sending an electronic mail notification to the Company confirming that the Member requests that his or her membership be cancelled, and the Company may rely on such electronic mail notification.

**SECTION 11 – EFFECTIVE DATE**

The Policies and Procedures are effective as of July 1, 2018, and shall remain in effect until modified and/or updated. All data mentioned above is subject to change without notice. Amendments take immediate effect.

Copyright ©2019 BitClub Network. All rights reserved

Terms of Service Privacy Policy